## Cas: No. 9,133.

### MARSHALL v. UNION INS. CO.

[2 Wash. C. C. 357.] [1]

Circuit Court, D. Pennsylvania. Oct. Term, 1809.

MARINE INSURANCE—ILLEGAL TRADE — CONCEAL-MENT—GROUND OF SUSPICION—CONDEMNA-TION—AGAINST RIGHT.

1. The vessel insured was captured on her voyage to Carthagena, and condemned on the ground of illicit trade, a part of the cargo having been brought from Spain to New-York by a Spaniard, entered for exportation, and after-wards sold to the plaintiff, the Spaniard going out as passenger on board the vessel, and the transaction being considered by the British court of admiralty as illegal, deeming it a trading be-tween the mother country and her colony. If the jury considered that the assured was guilty of concealment of the shipment of the goods of Spanish origin, then the policies effected by the plaintiff will be void, for the taint of part of the cargo would occasion a seizure, detention, and expense, and give the assured a right to aban-don.

2. The assured is not bound to anticipate every possible ground of suspicion which may, against right, weigh with the belligerent cruisers and courts, and to communicate the circumstances; although, if against right, the belligerent courts are in the habit of condemning property under particular circumstances, he should disclose the circumstances, if they exist, that the underwriter may know how to estimate the risk.

This was an action on four policies; one on the vessel, another on the freight, a third on the cargo, and a fourth on an additional cargo, effected in October, 1806. The addi-tional cargo consisted principally of goods brought by a Spaniard from Cadiz to New-York, and entered for exportation for the benefit of drawback. These goods were after-wards sold by the Spaniard to one Cazenove, recently, before they were reshipped, and sold by Cazenove to the plaintiff. The poli-cies contained the usual warranty of neutral property, to be proved here, and against illicit or prohibited trade. The defendant was informed that five Spaniards, with pass-ports, were to go passengers in this vessel to Carthagena, but that any part of the cargo had been brought by one of those passengers from Spain, and had been recently sold by him to the plaintiff, was not disclosed. The vessel and cargo, after having had her pa-pers taken away at sea by a British vessel, was again detained by another British ves-sel, carried into Jamaica, and condemned. The whole record was read, not as contain-ing evidence, but to show the ground of con-demnation. The objections to the recovery were, first; that there were strong circum-stances in the case, to show that the sale by the Spaniard was not bona fide, and that the apparent sale was as a cover; and, secondly, that the circumstance of part of the cargo having been brought from Spain, and recently sold by one of the passengers, ought to have

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

been disclosed to the defendants. Three pres-idents of insurance offices were examined, and they all gave it as their opinion that those circumstances were material. Two of them said, that a disclosure of them would have increased the premium. The third said, that it would have led him to inquire into the fairness of the transaction; but that, if he had found it bona fide, it would have made no difference with him.

WASHINGTON, Circuit Justice, in char-ging the jury, observed—that it was for them to weigh the evidence, and to decide, not upon suspicions, but upon such circumstances as ought to influence a correct mind, whether the sale was bona fide, or not. If not, it was a fraud upon the neutrality of the Unit-ed States, as well as upon the defendants, and amounted to a breach of warranty in the policy on those goods. That if the jury should be satisfied upon this point against the in-sured, it would be sufficient to avoid all the policies upon the ground of concealment, be-cause, although the taint upon part of the cargo would not, or ought not to have caused a condemnation of the other parts, or of the vessel; yet it would necessarily occasion a seizure, detention, and expense, if not danger to the whole, and would, at all events, give a right to the insured, on hearing of the cap-ture, to abandon. The insurer calculates not only the risk of condemnation, but of capture and detention, and a concealment of circum-stances which may produce the latter, must be material to the risk, and would, if known, increase the premium.

As to the second point, the jury must in-quire for themselves, whether these circum-stances were material to the risk, and in making this inquiry, they should carry back their minds to the time when these insur-ances were effected, without attending to the subsequent capture and condemnation. We are all very wise in finding out the causes which have led to particular events, after the events have taken place; and we are apt to give weight and consequence to circumstan-ces, which would originally have passed un-noticed. Would the circumstances of this case, which were disclosed, have appared ma-terial, in October 1806, to any of these par-ties? The insured knew, provided his pur-chase was bona fide, that the goods became thereby neutral, and were not liable to con-demnation. He also knew, that, in general, it was not necessary for the insured to dis-close from whom he had purchased the cargo which he asks to be insured; and he also knew, that according to the law of nations, it was no cause of condemnation, that the vendor was an enemy, and was to be a pas-senger in the vessel carrying the goods. It might or might not have occurred to him, that these were circumstances, which, with a suspicious court, or rapacious captors, might lead to difficulty; but we do not know that the insured is bound to anticipate every pos-

sible ground of suspicion, which might weigh with some minds, and totally escape the observation of others. If, according to any established adjudications of the belligerent courts, generally known, certain circumstances become grounds of condemnation, though in opposition to the law of nations, those circumstances, if known to the insured, should be disclosed. So a case may happen, where the circumstances are of such a nature, as to make the danger of capture very great, in which the court mean not to say, that a disclosure ought not to be made. But it is not every conjecture or opinion, as to the materiality of the circumstances concealed, which ought to weigh with the jury. In this case, the opinions of the witnesses, upon this point, deserve to be respected. Still, however, they are but opinions, which are not obligatory upon a jury. One of those witnesses put the question upon the true ground. The circumstances, if known, would have led him to inquire into the fairness and good faith of the transaction, and if he found it fair, they would have made no difference. This is certainly a very proper inquiry for a jury to make.

Verdict for plaintiff.

[NOTE. Motion for a new trial was made upon the ground of newly-discovered evidence. The motion was allowed. Case No. 9.134. Upon the new trial there was a verdict for defendants. Id. 9,135.]